## Stevens v. West Philadelphia Youth Civic League et al.

*Norman R. Dutton*, for plaintiff.

*Raymond Pace Alexander*, for defendants.

PARRY, J., January 9, 1939.—Bill in Equity to restrain the defendants from preventing, or from forming or continuing any combination to prevent the plaintiff and others similarly situated from working at their employment.

From the pleadings and proof I make the following:

### Findings of fact

1. The complainant is a member in good standing of the Philadelphia Moving Picture Operators Union, Local No. 307, and at the time the Bill in Complaint was filed was employed by the Colonial Theatre in West Philadelphia as a moving picture machine operator at a salary of $36.50.

2. The defendant Perdue is President of the West Philadelphia Youth Civic League, an unincorporated association of negroes having as its ostensible purpose the promotion of the welfare of the negro race. The defendant Simpkins is the Recording Secretary and the defendant Bridges the Business Manager of the said League.

3. The defendants have no financial or other interest in the Colonial Theatre but, in pursuance of a plan which they had successfully perpetrated at other theatres which enjoyed negro as well as white patronage, the defendant Perdue made demand upon the officials of the Union and the Manager of the theatre that the complainant Stevens be discharged and his place filled by a negro.

4. As Perdue's oral demands were not promptly complied with he wrote certain letters to the Union (Exhibit 1) and to the Manager (Exhibits 2 and 3) demanding the discharge or removal of the complainant within a week; in default of which he threatened action by various civic groups in West Philadelphia.

5. The civic groups of whose cooperation he had been assured were, "West Philadelphia Youth Civic League" and "West Philadelphia Civic Improvement League".

6. The threatened action contemplated by the defendant Perdue was a boycott of the theatre by means of picketing.

7. At the suggestion of Perdue and in consequence of the demands and threats aforesaid the Manager of the theatre on December 5, 1938 notified the complainant that he would be discharged at the end of two weeks and his place filled by a negro, because the Manager "was given orders to discharge him so that a negro operator could take his place".

8. The complainant's services had for two and one half years been entirely satisfactory to his employers and no other reason than that stated was given or pretended for his discharge.

9. In pursuance of the notice the complainant was discharged on December 19, 1938 and while the Union procured him another position at the same salary the engagement was only for one week.

10. The declared purpose of the defendant Perdue with the cooperation of the civic groups mentioned is to secure the discharge of white operators from theatres which a

substantial number of negroes attend and compel the employment of negroes.

## Discussion

The complainant, a white man with a wife and children to support, seeks from this court equitable relief against those who jeopardize his means of supporting his family. For two and a half years he worked at the Colonial Theatre as a moving picture machine operator, as it would seem to the entire satisfaction of his employer, when he was discharged for no other reason than that of his color. This action was not voluntary on the part of the management but due simply and solely to the fact that the defendant Perdue, who is the President of an unincorporated association exclusively composed of negroes, insisted that the complainant be discharged and a negro employed in his place. The reason given for this extraordinary conduct is that certain civic groups of negroes in Philadelphia conceive that since the economic betterment of their race requires that its members be employed, vacancies should be created where no positions are available by the simple process of forcing the discharge of white employees at establishments which are patronized by negroes.

These methods had been tried and found effective in other cases and proved effectual here. Perdue notified the officials of the Union to which the complainant belonged that he would insist upon the complainant's removal and the vacancy thus created must be given to a negro. He intimated in no uncertain terms to the manager that the complainant and his relief operator, also white, must be discharged. Unless this demand was complied with in a week the civic groups with which he was associated and of whose cooperation he had been assured would take action to enforce them. The action he contemplated was securing the withdrawal of negro patrons of the theatre by having pickets patrol the street in front of the theatre carrying notices. The manager complied with the respondent's de-

mands and the claimant and the white relief operator Norton, who had worked at the theatre three years, were forthwith discharged.

It needs but a statement of these facts to compel the conclusion that the conduct of the respondent was calculated to intimidate both employees and employers and consequently was unlawful. The employer presumably to avoid loss and interruption to his business yielded and to prevent further intimidation of those who would otherwise employ him, the complainant seeks by this bill to restrain the defendants from future acts of intimidation.

No one disputes the right of negroes or any other persons to combine together for the purpose of bettering their condition and in endeavoring to obtain their object they may inflict more or less inconvenience and damage upon an employer, but in this case there is no connection or relation whatever between the respondents and the complainant or his employer. It is idle to contend that the object sought is not the injury of the complainant for while it may well be that his discharge would result in a benefit to a member of the respondent's Association or to someone whose interest it is anxious to serve, the law will not look beyond the immediate loss and damage to an innocent party to the remote benefit that might result to somebody else.

It is urged on behalf of the respondent that this court has no jurisdiction in the premises as the case is governed by the Labor Anti-Injunction Act of June 2, 1937, P. L. 1198, since the controversy here involved grows out of a labor dispute as that dispute is defined in section 3 of the Act. This however is not a controversy "concerning terms or conditions of employment" and it does not concern the "association or representation of persons engaged in negotiating, fixing, maintaining, changing, or seeking to arrange terms or conditions of employment". Neither does it concern "employment relations or any other controversy arising out of the respective interests

of employer and employe". We hold therefore that the Act of Assembly has no application and we entertain no doubt of our jurisdiction to dispose of the matter.

It is further contended for the respondent that the claimant has suffered no damage and that he has not lost his employment because at the time of the hearing the union had secured him a position for one week at the same rate of wages. This contention we dismiss without comment.

The authority of New Negro Alliance et al. v. Sanitary Grocery Co., Inc., 303 U. S. 552, is urged on us by respondents, but in that case the Alliance had not requested the discharge of white employees nor perpetrated any action which would involve their discharge. The Alliance did no more than request recognition be given to its race in contracts of hiring made subsequent to their demands. The respondent here however specifically and arbitrarily demanded the removal of the complainant as the initial step in its proceedings.

We do not think we are controlled by this decision. First because interpretation of a differently worded statute was involved in defining "Labor Dispute" to include controversies arising out of racial discrimination and second, because here it is an employee who is seeking the aid of the court to prevent the violation of his Constitutional right. It is sufficient to note that we recognize a right to picket in other than labor disputes and if we hold that the present controversy does not fall within the terms of our own Act of Assembly, the right of the respondent to picket will not be thereby foreclosed.

An examination of the numerous authorities will disclose that in most cases any distinction between labor disputes and other controversies is difficult to justify. Cases from other jurisdictions in which negroes were restrained from picketing to compel merchants to employ members of their race are not in point because they were grounded on race riots. The matter of picketing has been exhaustively treated by a Court of coordinate jurisdiction in the

recent case of Individual Retail Food Store Owners Assn. v. Penn Treaty Food Stores Assn. et al., 33 D. & C. 100, in which the court denied an injunction to prevent picketing of its members' stores but proceeded to regulate and control the number of pickets, their conduct and their behavior. It held that entering houses and stores of plaintiffs by defendants was a trespass and a continuing one, was unlawful and would be enjoined.

Unquestionably the respondents, or any one else in fact, are privileged to request the management of a theatre to employ a negro machine operator and further they may lawfully urge the patrons of such a theatre to do whatever they lawfully may to let the management know their feelings on the subject.

Respondents are free to reach understandings if they can with Managers of theatres that when new motion picture operators are employed they shall be taken from negro members of the Union when such are available. If these agreements are broken pickets might truthfully proclaim that the theatre in question discriminates against negroes and should therefore be boycotted by negroes. But in influencing customers the truth alone and the whole truth must be told. Under the present circumstances if picketing were resorted to signs would have to read—"Refuses to discharge white operator to make place for a negro" or "No negro employed here". Whether this would accomplish the pupose of the respondents or whether it would conduce to the preservation of the peace may well be doubted, but any other expression would be false.

Without any parade of the numerous authorities, it is sufficient to say that we base our decree on the principles set forth in Erdman v. Mitchell, 207 Pa. 79.

### Conclusions of law

1. A combination to coerce workmen by interfering, with their employment or with them in obtaining employment, or to secure their discharge, or to intimidate any

employer from employing them by threats, on the ground that they are white in color, is an unlawful combination and will be restrained.

2. Such a combination is in violation of the indefeasible right of labor to acquire property and in violation of the Declaration of Rights.

3. The complainant has no adequate remedy at law and is entitled to the decree prayed for.

### Preliminary decree

And now, to wit, January 9, 1939, after hearing testimony on the rule to show cause why a preliminary injunction should not issue, it is ordered, adjudged and decreed that a preliminary injunction issue as follows:

1. That respondents, their officers, members, agents, and any of their employees be and they are hereby enjoined from interfering in any manner whatsoever with the existing or any other employment or prospective employment of the complainant merely because he is not a negro.

2. That respondents, their officers, members, agents and any of their employees, if and when engaged in picketing or patrolling any theatre, be and they are hereby enjoined:

(a) From committing or threatening to commit acts of violence against the persons or property of anybody;

(b) From placing more than two persons before each theatre for the purpose of picketing or patrolling the same;

(c) From walking upon sidewalks other than those on which the theatre ticket box is located;

(d) From obstructing the sidewalks and highways by walking at other than a normal pace or by remaining motionless on the sidewalks and highways;

(e) From approaching closer to the premises of the theatre than nine feet from the building line;

(f) From using obscene language and from making fraudulent, untrue, or partially true statements;

(g) From displaying any statement that is untrue.

This injunction to continue for five days sec. reg. and the motion for its continuance thereafter will be heard by the Court on Saturday, January 14, 1939, at 10 A.M., Room B, City Hall, Philadelphia.